THE PEOPLE OF THE STATE OF NEW YORK ex rel. 71 PARK AVENUE, INC., Respondent, v. HENRY M. GOLDFOGLE and Others, as Commissioners of Taxes and Assessments of the City of New York, Appellants.

First Department, May 24, 1929.

*William H. King* of counsel [*Patrick A. Bolger* with him on the brief; *George P. Nicholson, Corporation Counsel,* attorney], for the appellants.

*Harold Swain* of counsel [*Arthur H. Indell* with him on the brief], for the respondent.

O'MALLEY, J. The relator is the owner of premises known as No. 71 Park avenue, New York city. The property is improved by a twelve-story multi-family apartment building. After securing certain reductions of assessments the relator filed an application for further exemptions. Its application was based upon section 4-b of the Tax Law of the State of New York, as added by chapter 949 of the Laws of 1920, and as amended by chapter 281 of the Laws of 1922, and upon an ordinance enacted by the city of New York pursuant to said section.

Section 4-b of the Tax Law authorized the legislative body of the city, with the approval of the board of estimate and apportionment, to grant certain exemption from taxation for local purposes, other than assessments for local improvements, on certain buildings, "provided * * * that construction be commenced before April first, nineteen hundred and twenty-three, and completion for occupancy be effected within two years after such commencement." It further provided that "construction be deemed commenced when the plans have been filed with the proper authority and excavation actually and in good faith begun." Pursuant to such authority the city authorities enacted an ordinance which also provided for exemption from taxation if construction were commenced before April 1, 1923, and completed for occupancy within two years thereafter.

Construction of the relator's building commenced in 1923 and the building was completed within the two-year limit, the certificate of occupancy being issued June 6, 1924. Plans were filed with the proper authority before April 1, 1923, and the question involved is whether construction commenced before such date.

There is sufficient evidence to justify a finding that, beginning March 27, 1923, and continuing until April 4, 1923, a hole about five feet square and ten feet deep was dug. This excavation, it is claimed, was the commencement of construction before April 1, 1923.

The new building in question was constructed on the space formerly occupied by three tenement houses known as Nos. 69, 71 and 73 Park avenue. While much of the relator's financing was undertaken before April 1, 1923, contracts let for the major part of the work before such date, and the contract of purchase made March 8, 1923, title was not taken until April 7, 1923.

We are of the opinion that the digging of this hole was not an " excavation actually and in good faith begun," within the purview of the statute. The work of demolition of the old structures was not actually commenced until about May 6, 1923, and excavation as a whole, of course, could not start until such demolition was complete.

It is true that the evidence is to the effect that on the spot where this hole was dug there was erected an exterior steel column. The evidence, however, is further to the effect that this steel column finally went down about fifteen feet and that the general excavation for the entire structure was about twenty feet below street level.

A representative of the architects testified that it was necessary that the column should go down to rock, and that this was approximately thirty feet below street level. The evidence is further to the effect that the excavation made might be styled a test hole. While it is true that the witnesses giving such testimony contended that the excavation was more than a test hole, it was at all times admitted that for the erection of the steel column a much deeper and larger hole was required. Photographs of the work indicate that the hole was in the nature of a shaft with wooden shoring supporting its sides. Every-day experience teaches that for the erection of a building of the type in question excavation is not done in such way. As the whole area had to be excavated, the work would not ordinarily be done by the sinking of such a shaft. Moreover, it appears that this preliminary digging was done by employees of the general contractor, whereas, the contract for the real excavation was let to a subcontractor.

The words " excavation actually and in good faith begun " are to be read according to their natural and obvious import. Their inclusion in the statute precludes the idea that the Legislature intended that *any* excavation of whatsoever nature would satisfy the requirements of the statute. Moreover, their meaning must be determined in the light of the usual and ordinary circumstances of building construction. It is a matter of common

knowledge that plottage for the erection of large buildings is frequently assembled and that ultimately the whole surface of such plottage must be excavated to a greater or lesser depth, depending upon the character and height of the building to be erected. The meaning of the word " excavation " is to be determined by reference to the particular circumstances. Surely it may not be said that the Legislature intended that over an extensive plottage of many square feet the digging of an isolated hole, weeks in advance of the commencement of the actual excavation, without any possibility of continuity of operation, would constitute excavation actually in good faith begun. We do not mean to say that a slight excavation may not in some instances be deemed the commencement of excavation in good faith. Such, however, must from all the facts and circumstances of a particular case, bear a reasonable and logical relation to the excavation work as a whole and be of such a character as to indicate intention that it shall be the beginning of the real work to be done.

Here, from all the facts and circumstances, a hole was dug, not with any such intention, but with the sole idea that by such work the relator might drag itself within the letter, rather than the spirit of the statute. This is shown by the letter to the construction engineer in which there was expressed a desire for speed and for having some slight work done, merely to gain, if possible, the benefit of the exemption

It follows that the order should be reversed, with ten dollars costs and disbursements, and the assessment confirmed, with costs.

FINCH, MERRELL, MARTIN and PROSKAUER, JJ., concur.

Ordered reversed, with ten dollars costs and disbursements, and the assessment confirmed, with costs. Settle order on notice.